# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| NANETTE SUE LITHERLAND,  ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:20-CV-630-ACL |
| ) | |
| CHRIS MCBEE, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Nanette Litherland's Petition for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. Procedural History

Petitioner is incarcerated at the Chillicothe Correctional Center in Chillicothe, Missouri, pursuant to the judgment and sentence of the Circuit Court of St. Francois County, Missouri. (Doc. 19-2 at pp. 148-51.) After a second jury trial,[1] Petitioner was found guilty of first-degree murder and first-degree assault. The trial court sentenced her to life imprisonment without parole and to life imprisonment, respectively. The sentences run consecutively.

Petitioner raised one point on direct appeal of her convictions. She argued that the trial court abused its discretion in overruling defense counsel's objections to testimony that Petitioner had threatened to kill other people in the past because it was "bad acts" evidence and prejudicial. (Doc. 31-3 at 17.) The Missouri Court of Appeals affirmed the convictions. (Doc. 31-5.)

---

[1]Petitioner was convicted in her first trial, but those convictions were reversed by the Missouri Court of Appeals on direct appeal, and the matter was remanded for a new trial. (Doc. 19-10.) The instant Petition stems from the second trial.

1

Petitioner raised one point in her amended post-conviction relief motion.  She argued that State's witness Jonathan Hand recanted his testimony after the second trial, and that this new evidence showed that the prosecutor used perjured testimony at trial.  (Doc. 19-6 at 53–67.)  The motion court denied Petitioner's motion and her request for an evidentiary hearing.  (19-6 at 87–90.)  The Missouri Court of Appeals affirmed the decision of the motion court.  (Doc. 19-9.)

Petitioner filed the instant Petition on May 6, 2020, in which she raises four grounds for relief.  (Doc. 1.)  First, she argues that the state court trial judges were biased.  Second, Petitioner contends that her conviction was the result of prosecutorial misconduct.  In her third ground for relief, Petitioner argues that she received ineffective assistance of trial and appellate counsel.  Finally, Petitioner's fourth ground for relief asserts a claim of newly discovered evidence.

Respondent argues that the Petition should be denied because most of the claims are procedurally defaulted, and all of the claims fail on their merits.

## II.   Facts[2]

Petitioner wanted Jacob Feldman to kill her husband, Jerry Litherland, and also Jerry's father, James Litherland.[3]  (Doc. 31-1 at p. 277.)  Petitioner and Feldman met with Feldman's friend, Jonathan Hand.  *Id.* at 434–36.  Feldman asked Hand if he could kill Jerry and make the murder look like an accident.  *Id.* at 436.  Feldman told Hand it was because Jerry was molesting the daughter of Petitioner and Jerry, M., who was also Feldman's girlfriend.  *Id.*  Feldman offered Hand varying amounts of money to kill Jerry, from $10,000, to $15,000, and finally $100,000 to kill both James and Jerry.  *Id.* at 277, 331–32, 439.

---

[2] The facts are taken from the Attorney General's brief (Doc. 19 at pp. 3-7), and are viewed in the light most favorable to the verdicts.

[3] First names will be used to distinguish between Jerry Litherland and James Litherland.

2

Petitioner soon enacted her plan. On September 22, 2009, Petitioner drove Feldman to Jerry's residence. *Id.* at 279. When James's head popped out of his garage, Feldman shot him in the back of his head. *Id.* at 279–80. Feldman fled the scene without knowing whether James was alive or dead. *Id.* at 280. Feldman was angry Petitioner was not around to give him a ride away from the crime. *Id.* at 280–81. James did not die from his injuries, and emergency personnel treated him for his gunshot wound. *Id.* at 463–64. Later, Feldman admitted to Justin Messex that Feldman had shot James in the back. *Id.* at 425–427. Feldman also told Messex that Jerry had molested M. and that Petitioner told Feldman that she would pay him out of the life insurance money if Feldman would kill Jerry. *Id.* at 428.

Gwen Buhler, who was married to Petitioner's son, Thomas, overheard Petitioner arguing with Feldman after the James Litherland shooting. *Id.* at 190–191, 210–11. Petitioner told Buhler that Petitioner had asked Feldman to try and kill James. *Id.* at 210–11. Gwen Buhler also heard Feldman state that Petitioner wanted him to shoot both James and Jerry. *Id.* at 209, 230, 281–82. Petitioner worried that Jerry would alter his life insurance policies to exclude her, so she wanted him killed right away. *Id.* at 228–30, 241– 42, 282, 340. Thomas Buhler lent Feldman one of his guns for the killing. *Id* at 213, 231. Petitioner instructed Thomas Buhler to drive Feldman to the place where Feldman would shoot and kill Jerry Litherland. *Id.* at 208–09, 214, 283. Petitioner promised Feldman that she would pay for his attorney's fees and provide him money if he got caught. *Id.* 236–37. Feldman later became upset when Petitioner failed to carry through with these promises. *Id.* at 237–38.

On November 8, 2009, Feldman went to the Litherland residence in rural Potosi, Missouri, to murder Jerry. *Id.* at 284–285. All of this was with the go ahead from Petitioner. *Id.* at 288. Thomas Buhler notified Feldman that Jerry Litherland was coming home so that Feldman could

3

assume an ambush position. *Id.* at 286–87. From his position, Feldman couldn't miss: he was so close to where Jerry would enter, he could have held a conversation with him first. *Id.* at 287. Jerry entered the house. Feldman shot him three times. Jerry died from multiple gunshot wounds to the chest. *Id.* at 171–72, 175, 288.

The crime completed, Feldman and Thomas Buhler hid the murder weapon in the woods. *Id.* at 288. James told Petitioner that Jerry was badly wounded and bleeding, but Petitioner decided to get fully dressed before calling 9-1-1 to report the emergency. *Id.* at 535–37. Petitioner went to the Litherland residence and got there before the police. *Id.* at 221. Before seeing Jerry's body or anyone informing her what had happened, Petitioner told the 9-1-1 operator "My husband's been shot." *Id.* at 540–41. Petitioner told Thomas Buhler to get rid of the murder weapon. *Id.* at 222. During surveillance, police saw Feldman enter the Buhler residence, leave the residence, and get picked up by Petitioner in her pickup truck. *Id.* at 261–63. When questioned by police, Feldman admitted to shooting James Litherland and killing Jerry Litherland. *Id.* at 400. Feldman led police to the murder weapon, an SKS rifle, which Feldman and Buhler hid in the woods. *Id.* at 288, 400–01.

Petitioner told police that Jacob Feldman was protective of M. and that Petitioner did not know where Feldman was on the night of Jerry's murder. *Id.* at 417–18. Petitioner would change her story regarding how she learned that her husband had been shot: during the first interview, she stated that Thomas Buhler told her about Jerry's death. Four days later, she said that James broke the news to her first. *Id.* at 419. Petitioner and her daughter, M., testified for Petitioner's defense. *Id.* at 470–558. The defense tried to raise the issue that Jerry hit M. and that James was a pervert who groped women and girls, including M. *Id.* The defense also tried to argue that Feldman attacked Jerry and James on his own initiative, without any involvement by Petitioner, in an

4

attempt to "protect" M. from the abuse. *See, e.g.*, *id.* at 477, 492. At one point, defense counsel referred to Jacob Feldman as "Jerry Feldman," apparently swapping the first names of the victim with the name of his murderer. *Id.* at 483.

### III.   Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus. . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28

U.S.C. § 2254(e)(1).  *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct when they are fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).  In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

## IV.   Procedural Default

For state prisoners, a petitioner must first exhaust state remedies before presenting a claim in a federal habeas petition.  28 U.S.C. § 2254(b)(1).  To exhaust state remedies, a petitioner must fairly present the "substance" of the claim to the state courts on direct appeal and in any post-conviction proceedings.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994).  The petitioner's federal court claim must then assert the same factual and legal bases as the state court claim.  *Flieger*, 16 F.3d at 885.

A petitioner's claim is procedurally defaulted when she fails to exhaust all state remedies. *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838,

845 (1999)).  In that case, the Court should not review the claim unless the petitioner can show (1) "cause and prejudice" excusing that procedural default or (2) actual innocence.  *Id.* at 760.  A claim is also procedurally defaulted if the Petitioner actually raised the claim in state court, but the state court disposed of the claim based on a state law procedural bar.  *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).

If a claim of error is preserved in the trial court, Missouri appellate courts determine whether an error occurred and, if so, whether the error was prejudicial.  *State v. Johnson*, 207 S.W.3d 24, 34 (Mo. banc 2006).  If a claim is not preserved in the trial court, Missouri appellate courts may still review the claim under the plain-error standard.  *Id.*  But these unpreserved claims are defaulted for federal habeas purposes, even if the state appellate court later reviews the unpreserved error.  *Clark v. Bertsch*, 780 F.3d 873, 876 (8th Cir. 2015); *see also Zink v. State*, 278 S.W.3d 170, 191 (Mo. banc 2009) ("A movant cannot use a Rule 29.15 motion to raise claims that could have been, but were not, raised on direct appeal except in rare and exceptional circumstances.").

## V. Petitioner's Claims

As previously noted, the Petition raises four grounds for relief.  Each are discussed below.

Petitioner also appears to raise additional claims in her 96-page Traverse that were not raised in the Petition.  For instance, she raises an apparent vindictive prosecution claim (Doc. 21 at 7–8), a claim that her second trial violated her constitutional right to be free from double jeopardy (Doc. 21 at 10–11), that the testimony of her daughter-in-law was fabricated (Doc. 21-1), and a claim that the prosecutor tried to kill her via poisoning to prevent her from testifying (Doc. 21 at 9, 35).  She also includes claims related to her first trial and convictions.  To the extent that any of these arguments are an attempt to raise new grounds for relief, they will be denied

7

because only those grounds raised in the original Petition may be considered. *See Ruth v. Missouri*, No. 11-3487-CV-S-RED-P, 2012 WL 2194152, at *9 (W.D. Mo. June 14, 2012); *Scott v. Fondren*, No. CIV. 09-762 RHK/JJG, 2009 WL 3855926, at *3 (D. Minn. Nov. 17, 2009); *Verive v. Redington*, 4:15-CV-1676-SNLJ-NCC, 2019 WL 3416741, at *9 (E.D. Mo. Feb. 15, 2019).

1. **Ground 1: Judicial Misconduct**

In her first ground for relief, Petitioner argues that the state court judges were biased against her. Specifically, she claims that at her first trial, Circuit Judge Pratte discouraged her from requesting a continuance, allowed the prosecutor to offer suggestions on how to rule on motions, and did not inform the prison of the Court of Appeals' reversal of the first conviction. (Doc. 1 at 5). Petitioner's claims related to Judge Pratte are moot because Petitioner received a new trial after Judge Pratte's actions. *See Hayes v. Evans*, 70 F.3d 85, 86–87 (10th Cir. 1995) (successful appeal in state court rendered federal petition moot).

Petitioner next alleges that Circuit Judge Horn—the judge presiding over Petitioner's second trial—allowed her leg iron to be visible to the jury, intentionally allowed false testimony to be presented to the jury, and gave her an enhanced sentence. (Doc. 1 at 5.)

Respondent correctly argues that Petitioner's claims related to Judge Horn are procedurally defaulted. Though Petitioner presented the claims in her *pro se* post-conviction relief motion (Doc. 19-6 at 2), she abandoned these claims in her amended motion (*id.* at 53-67). Her failure to include all aspects of her current first ground for relief in her amended post-conviction motion precludes state and federal court review of ground one. Mo. Sup. Ct. R. 29.15(g); *Tisius v. State*, 519 S.W.3d 413, 425 (Mo. banc 2017). Petitioner offers no explanation as to her failure to properly raise these claims in state court. As such, she has not shown good cause to allow the undersigned to review this claim of error. *Murray v. Carrier*, 477 U.S. 478, 491–92 (1986).

8

Further, Petitioner's claims fail on their merits. Petitioner appears to argue that, because the judge ruled against her, the judge must have been biased. A trial court's rulings are not a basis for a finding of bias. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

Accordingly, Ground One will be denied.

### 2. Ground 2: Prosecutorial Misconduct

In her second ground for relief, Petitioner alleges that her convictions were a product of prosecutorial misconduct on multiple bases that will be discussed below.

#### i. The Recanted Testimony of Jacob Hand

Petitioner first contends that the prosecutor knowingly presented perjured testimony. Petitioner did not present this claim in her motion for new trial (Doc. 19-2 at pp. 142-49) or on direct appeal (Doc. 31-3). In her amended post-conviction relief motion, Petitioner raised a claim of newly discovered evidence based on the recanted testimony of Hand, but did not allege that the prosecutor knowingly used perjured testimony. (Doc. 19-6 at pp. 53-67.) The motion court concluded that the claim was meritless. (Doc. 19-6 at 2–4.) The Missouri Court of Appeals affirmed. (Doc. 19-9.)

To prove that the government violated Petitioner's rights by using false testimony, Petitioner must show 1) that the government used perjured testimony, 2) that the government knew or should have known of the perjury, and 3) that there is a reasonable likelihood that the perjured testimony affected the jury's judgment. *United States v. Peterson*, 223 F.3d 756, 763 (8th Cir. 2000). Under 28 U.S.C. § 2254(d), a writ shall not be granted for any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or

9

"that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

First, this specific claim of prosecutorial misconduct is procedurally defaulted. Petitioner did not raise this claim before the State Court of Appeals, instead framing her claim as newly discovered evidence. *See* Doc. 19-7. As the Court of Appeals noted, Petitioner "provided no direct allegation that the prosecution knowingly used perjured testimony." (Doc. 19-9 at 5).

Even if the claim were not procedurally defaulted, Petitioner is not entitled to relief. The State courts reviewed Petitioner's claim of new evidence and also considered whether the prosecution knowingly used perjured testimony at trial, even though Petitioner did not directly allege such. Because a state court adjudicated this issue on the merits, deference must be given to that opinion unless it violates the standards of 28 U.S.C. § 2254(d)(1)–(2). The motion court addressed the claim that state witness Jonathan Hand recanted his testimony after Petitioner's second trial, and that this counts as newly discovered evidence. (Doc. 19-6 at pp. 77-80.) The court recognized that under Missouri law, claims of newly discovered evidence are only allowed when the State knowingly used perjured testimony to obtain a conviction. *Id.* at 78-79 (citing *Williams v. State*, 497 S.W.3d 395, 398 (Mo. App. E.D. 2016). The motion court concluded that Petitioner "failed to allege facts entitling her to relief in that she asserts no facts, and the record has none, that the prosecutor knowingly used false evidence." *Id.* at 79. The motion court also held that even if Hand's recantation was genuine—and that he fabricated trial testimony—there is no evidence that the prosecutor knew that Hand's testimony was false when given at either of Petitioner's two trials. *Id.*

The Court of Appeals agreed with the motion court that Petitioner failed to satisfy her burden of proving the narrow exception, or to even specifically allege that the prosecutor

10

knowingly used perjured testimony.  (Doc. 19-9 at 5.)  Even so, the Court of Appeals did not think that the new evidence was reliable or that she would not have been convicted had the testimony not been included.  The Court of Appeals examined Hand's recantation to see whether this new evidence would have changed the verdict and concluded that it would not have.  *Id.* at 5-7.  The Court of Appeals noted how recanting testimony is exceedingly unreliable and regarded with suspicion, especially when "Hand had the opportunity to recant his testimony after the first trial, but again agreed to testify against Movant at her second trial." *Id.* at 5 (quoting *State v. Manley*, 414 S.W.3d 561, 566 (Mo. App. E.D. 2013)).  Also, Hand's testimony was consistent at both trials.  *Id.* at 5.

The Court of Appeals noted that Hand's testimony was not the only evidence leading to Petitioner's conviction.  *Id.*  The State presented other evidence, including testimony of co-conspirators, showing that Petitioner was involved in the conspiracy to shoot James and Jerry.  *Id.* at 5–6.  For example, Gwen Buhler-Fox, Petitioner's daughter-in-law, testified to the existence of the conspiracy and that Petitioner was a ringleader.  *Id.* at 6.  Also, the jury heard the testimony of the shooter, Jacob Feldman.  Even though Feldman said that he only agreed to testify against Petitioner to avoid the death penalty, his testimony at the first trial came out in the second trial.  He testified that Petitioner offered him money to shoot James and Jerry, and that Petitioner supplied him with a gun.  *Id.* at 6.  These conclusions are to be given deference unless Petitioner can show it was an unreasonable application of the facts or contrary to federal law.

The State courts' determinations were neither contrary to nor an unreasonable application of clearly established Federal law, and Petitioner points to no case law or authority to suggest otherwise.  Instead, Petitioner appears to claim that the court made an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2).  Petitioner's only basis for claiming that Jonathan Hand's

11

testimony at both trials was fabricated is a one page "declaration" signed by Hand. (Doc. 1-1.) There, Hand claims that his testimony was coerced because "the authorities" told him that his friend, Jacob Feldman, would get the death penalty unless he testified that Petitioner was involved in the conspiracy. *Id.* For the reasons given by the State courts, Hand's new claims are highly suspect. He had the opportunity to change his testimony between the first and second trials, as Feldman did, but did not do so. Hand alleges that his testimony was coerced because he was motivated to help his friend, Feldman, avoid the death penalty. But Feldman had already been sentenced to life in prison before Petitioner's second trial. Thus, Hand's alleged motivation—to lie under oath to protect his friend from the death penalty—evaporated once Feldman was sentenced. Likewise, as identified by the State courts and the Respondent's brief (Doc. 19 at 10–12), the State presented plenty of evidence at trial, including the testimony of co-conspirators, to allow the jury to find Petitioner guilty beyond a reasonable doubt.

Even if Hand's testimony was entirely fabricated as Petitioner claims it to be, Petitioner provides no evidence that the prosecution knowingly put on perjured testimony at the time of either trial. Hand only recanted his testimony *after* the trial was over. As Petitioner recognized in her own post-conviction appeal, "Hand did not recant his testimony and come forward with this information until February 7, 2017." (Doc. 19-7 at 18.) Thus, Hand's new testimony was unavailable to both Petitioner *and* the State. The State would have had no way of knowing Hand's testimony was fabricated. As such, Petitioner has failed to show any reason why the decisions of the State courts should be disrupted or that the State knowingly used perjured testimony.

Petitioner also claims that the testimony of Jacob Feldman was coerced because he recanted his testimony before the second trial. (Doc. 1-2.) At the second trial, Jacob Feldman testified that he fabricated his testimony to avoid the death penalty and to protect M. from potential prosecution.

12

*See, e.g.*, Doc. 31-1 at 364–67.  Petitioner contends that this is another instance of the prosecutor knowingly using perjured testimony.  But this ground was not raised on either her direct appeal or her amended petition in state court.  Thus, it is procedurally defaulted.

ii.  Other Accusations of Prosecutorial Misconduct

Petitioner also claims that the State did not disclose exculpatory information as required by *Brady v. Maryland*, 373 U.S. 83 (1963).  *See* (Doc. 1 at 6, 14–15.)  She suggests that the State did not disclose information proving that she "did not do all of the other bad things." (Doc. 1 at 6).  She also argues that the State did not disclose the fire marshal's report.  *Id.*  She claims that the State withheld information showing that Jerry and James committed bad acts.  *Id.*  Finally, she argues that the State did not disclose the death certificate of a victim.  *Id.*  Petitioner also includes generalized claims that the prosecutor was "bias[ed], corrupt, engaging in unethical behavior, [de]frauding insurance company of rightful owner," and another claim that the prosecutor made her sick to try and murder her.  (Doc. 21 at 35.)

Like some of her other claims, these claims are procedurally defaulted.  Petitioner did not present these claims in her *pro se* post-conviction relief motion, her amended post-conviction relief motion, or in her appeal from the denial of post-conviction relief.  Her failure to raise these claims in the state courts constitutes a procedural default that gives rise to an adequate and independent procedural bar to review.  *Sweet v. Delo*, 125 F.3d 1144, 1149–50 (8th Cir. 1997).  She has also failed to show cause or prejudice as to why these claims were not presented below.  Thus, these claims are procedurally defaulted.

Accordingly, Ground Two will be denied.

**3. Ground 3:  Ineffective Assistance of Counsel**

13

In her third ground for relief, Petitioner argues that she received ineffective assistance of trial and appellate counsel. (Doc. 1 at 8.) Petitioner cites to numerous examples in her Petition and in her Traverse. For example, she contends that her trial counsel failed to object to the introduction of evidence that was seized in violation of the Fourth Amendment, that at one point counsel mixed up the victim's and killer's names, and that he failed to object to hearsay evidence and impeach the State's witnesses.

All allegations in Ground Three are defaulted, because Petitioner did not present these claims at any point during the post-conviction proceedings. She has also failed to show cause and prejudice. Petitioner does not argue that her counsel was ineffective on post-conviction review, which means *Martinez v. Ryan*, 566 U.S. 1 (2012) is not implicated. Thus, Ground Three will be denied.

### 4. **Ground 4: New Evidence**

Though not clear from the Petition, the fourth ground for relief appears to be a claim of newly discovered evidence that assault victim James died of cancer or organ failure caused by Agent Orange, not from the shot to the back of James's head. (Doc. 1 at 9.) In Missouri state court, a claim of newly discovered evidence is cognizable in a motion for new trial or on direct appeal. *State v. Terry*, 304 S.W.3d 105, 108–9 (Mo. banc 2010). Petitioner did not present a claim of newly discovered evidence in either her direct appeal or her post-conviction relief proceedings. Petitioner's failure to present the claim constitutes default that precludes review of the claim in state and federal court. Petitioner has not shown good cause and actual prejudice on why this claim should now be heard. In any event, James's cause of death is wholly unrelated to her trial or her conviction for first-degree assault.

As for Petitioner's claims that Hand's "recanted testimony" constitutes new evidence, those claims were already discussed *supra*. The State court reviewed this claim on the merits and already rejected it. That finding is entitled to deferential review.

Having shown no grounds for granting habeas relief, the Petition will be denied.

## VI. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). There is a substantial showing if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). The undersigned is not persuaded that the issues raised in this Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

Dated this 19th day of April, 2023.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

15